UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CIVIL ACTION NO:
6:24-cv-00103 (DNH/ TWD)

)
MEREDITH BOARDMAN,                               )
            Plaintiff          )          **JURY TRIAL**
                                )          **DEMANDED**
          v.                        )
                                )
LCS JANITORIAL SERVICE AND                       )
SUPPLY, INC.; GOODRICH                            )
CORPORATION D/B/A COLLINS                         )
AEROSPACE; LARRY POSSELT;                         )
AND BLAKE SULLIVAN                                )
            Defendants        )
)

## COMPLAINT AND JURY DEMAND

## PARTIES

1.　　　The plaintiff, Meredith Boardman ("Ms. Boardman" or "Plaintiff"), is a female resident of the State of New York residing at ███████████, Rome, NY.  Rome is in Oneida County.

2.　　　Defendant LCS Janitorial Service and Supply, Inc. ("LCS") is a domestic (New York incorporated) company with its principal offices located at 6680 Martin St., Rome, NY. Rome is Oneida County.

3.　　　Defendant Goodrich Corporation, doing business as Collins Aerospace ("Collins") is registered as a domestic corporation with the New York Department of State with its principal offices located at 2730 West Tyvola Road, Four Coliseum Centre, Charlotte, North Carolina.

4.　　　Defendant Larry Posselt ("Posselt") is a male individual who, upon information and belief, resides in New York.  Posselt is named in his individual and official capacity.

5.     Defendant Blake Sullivan ("Sullivan") (LCS, Collins, Posselt, and Sullivan collectively "Defendants") is a male individual who, upon information and belief, resides in New York.  Sullivan is named in his individual and official capacity.

**JURISDICTION AND VENUE**

6.     This court has subject matter jurisdiction under 28 U.S.C. § 1331 because Ms. Boardman has brought claims pursuant to the Civil Rights Act of 1964 ("Title VII"). The court may exercise supplemental jurisdiction over Ms. Boardman's state law claims. 28 U.S.C. §1367.

7.     Venue is appropriate in the Northern District of New York as the acts or omissions occurred within the Northern District of New York and Ms. Boardman resides within the Northern District of New York.

8.     This court has personal jurisdiction over LCS because LCS is a resident of the state of New York (including because it is incorporated in New York and its principal place of business is in New York).  Additionally, LCS engaged in and transacted business in the State of New York, including by owning, managing and/or operating facilities in New York, and by employing the Plaintiff in New York, and the Plaintiff's causes of action stem largely from business transactions and employment actions by LCS within the State of New York.  The Company is registered with the New York Department of State as a domestic corporation operating in the State New York. Indeed, the Plaintiff was employed by LCS in the State of New York at a facility located in Rome, NY, was managed by LCS in the State of New York, and was terminated by LCS in the State of New York.

9.     This court has personal jurisdiction over Collins because Collins is incorporated in New York and additionally engaged in and transacted business in the State of New York, including by owning, managing and/or operating facilities in New York, and by employing the

Plaintiff in New York, and the Plaintiff's causes of action stem largely from business transactions and employment actions by Collins within the State of New York. Collins is registered with the New York Department of State as a domestic corporation operating in the State of New York, including with a DOS process address located in the State of New York (at 28 Liberty Street, New York, NY). Indeed, the Plaintiff was employed by Collins in the State of New York at a facility located in Rome, NY, was managed by Collins in the State of New York, and was terminated by Collins in the State of New York.

10.     This court has jurisdiction over Posselt because Posselt is, upon information and belief, a resident of New York. Additionally, Posselt purposefully availed himself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Ms. Boardman) in New York.

11.     This court has jurisdiction over Sullivan because Sullivan is, upon information and belief, a resident of New York. Additionally, Sullivan purposefully availed himself of New York law by operating a business in New York, transacting business in New York, and employing employees (including, during the times relevant to this Complaint, Ms. Boardman) in New York.

## STATEMENT OF FACTS

12.     In or around June 2019, Ms. Boardman began employment with LCS Janitorial Service and Supply Inc. ("LCS") in Rome, NY as a cleaner.

13.     In or around September 2019, LCS assigned Ms. Boardman to clean at Collins in Rome, NY.

14.     Collins and LCS (individually and collectively) had control over Ms. Boardman's payment, scheduling, assignments, leaves of absence, and/or management, including by making

decisions related to Ms. Boardman's hiring and firing, her work schedule, and by controlling the policies and procedures governing Ms. Boardman's employment.

15.     As such, at all relevant times after September 2019, Ms. Boardman was jointly employed by Collins and LCS (the "Company").

16.     At all relevant times, Ms. Boardman was jointly supervised by Larry Posselt ("Posselt"), the owner of LCS, and Collins Maintenance Manager Blake Sullivan ("Sullivan"), who was employed by Collins.

17.     At all relevant times, the Company (each individually and all collectively) employed 15 or more employees 20 or more calendar weeks during the preceding 12 months.

18.     As such, the Company (each individually and all collectively) was an employer under federal and state anti-discrimination laws, including Title VII of the Civil Rights Act ("Title VII") and the New York State Human Rights Law.

19.     At all relevant times, Ms. Boardman's performance with the Company was satisfactory.

20.     Indeed, due to her satisfactory performance, Ms. Boardman received two merit-based pay raises during her time with the Company.

21.     Notably, when Ms. Boardman started her assignment at Collins, she was one of very few women working at Collins.

22.     Specifically, of the one to two hundred employees working on Ms. Boardman's floor, only approximately seven or eight of them were women.

23.     When Ms. Boardman began her employment with Collins, she was never given the mandatory New York State Sexual Harassment Prevention Training by them, and never received it by them at any time during her employment.

24.     In or around February 2022, Ms. Boardman noticed that Carlos Benta ("Benta"), a male employee at Collins, was giving her an inordinate amount of attention, and she began feeling uncomfortable.

25.     In or around May 2022, Ms. Boardman noticed that Benta would deliberately position himself near her while she was cleaning. Indeed, he would often be present in the space where Ms. Boardman was working, despite the fact that he did not need to be near her.

26.     On or around May 26, 2022, Benta inquired into Ms. Boardman's use of social media, in what was clearly an attempt to locate her on social media. Notably, Ms. Boardman made it clear that she was not interested.

27.     Benta then asked Ms. Boardman if she had any "special pictures" of herself on her phone. Based on the context of his statement and his leering tone and expression, it was clear that Benta was referring to sexually explicit photographs of Ms. Boardman.

28.     Ms. Boardman responded that she did not.

29.     Benta continued to pressure Ms. Boardman to show him photographs of herself from her phone.

30.     In an effort to stop Benta from continuing this unwanted behavior, Ms. Boardman showed Benta a photograph of her wedding on her phone. Indeed, Ms. Boardman clearly indicated that she was married, that she was not interested in a relationship (sexual or otherwise) with him, and that his conduct was unwanted and needed to stop.

31.     On or around June 1, 2022, Benta repeatedly asked if he could take a picture of Ms. Boardman.  Indeed, based on a leering manner in which Benta made these requests, he clearly appeared to be requesting a sexually suggestive picture and on a broader level demanding a picture in a sexually harassing and otherwise harassing manner.

32.     In response to Benta's sexually harassing demands, Ms. Boardman informed him that this behavior was unwanted and unwelcome.

33.     However, Benta's sexually harassing conduct continued (and, indeed, escalated).

34.     For example, later in the day on or around June 1, 2022, Ms. Boardman was in the janitorial supply closet. Benta proceeded to sexually harass her and physically grabbed her and sexually touched her in what amounted to a sexual assault.

35.     Indeed, Benta picked Ms. Boardman up and pressed his face forcibly into her breasts.

36.     Ms. Boardman felt totally shocked, scared, and overwhelmed, and she made it clear that this assault was unwelcomed, unwanted, and needed to stop.

37.     Later that same afternoon, Ms. Boardman was cleaning in the bathroom when Benta forced his way into the bathroom and proceeded to sexually harass her again. He picked Ms. Boardman up off of the ground hugging onto her with his head in her breasts and his hands on her buttocks.

38.     Benta carried Ms. Boardman around for a time while refusing to let her down.

39.     Benta then picked Ms. Boardman up in a similar sexually assaulting manner two more times in quick succession.

40.     Ms. Boardman was completely shocked and scared.

41.     Benta then proceeded to push Ms. Boardman against a stall wall in the bathroom and again sexually assaulted her by pressing his face into her breasts in a clearly sexual gesture.

42.     Benta then further escalated his sexual assault of Ms. Boardman by grabbing her genitals.

43.     Ms. Boardman was horrified and pushed Benta off of her.

44.    Extremely violated and alarmed, Ms. Boardman communicated that Benta must stop immediately and made it clear that his sexually harassing behavior and sexual assaults were unwelcome and unwanted.

45.    Ms. Boardman exited the bathroom as soon as possible after she was able to push Benta off of her.

46.    On or around June 2, 2022, Ms. Boardman was waiting for the men to leave the men's bathroom so that she could clean it.

47.    Another male Collins employee, Frank Ward ("Ward"), came out of the bathroom. Ward witnessed Benta trying to interact with Ms. Boardman outside of the bathroom and observed that she was very uncomfortable and clearly did not wish to interact with Benta.

48.    Once Benta left, Ms. Boardman raised protected concerns to Ward, and she told him about the sexual assault by Benta that had occurred on or around June 1, 2022.

49.    Ms. Boardman asked Ward to please come over if he saw Benta around her because she feared another sexual assault.

50.    Later that day, on or around June 2, 2022, Benta continued to try and interact with Ms. Boardman in an inappropriate manner despite her repeated insistence that his inappropriate conduct (including the sexually harassing behavior) must stop. For example, Benta continued to try and position himself close to Ms. Boardman in isolated areas where they would be alone.

51.    For instance, when Ms. Boardman was cleaning the bathroom with the janitorial sign, which read "Closed for cleaning," blocking the entrance to the bathroom, Benta attempted to come inside, claiming he needed to wash his hands. Notably there was a sink located outside the bathroom that he could use and therefore it was clear he was trying to force Ms. Boardman to be in an isolated room (the bathroom) with him.  Ms. Boardman indicated he could wash his hands

elsewhere, as the bathroom was closed for cleaning, and made it clear she did not want him in the bathroom with her alone.

52. That same day, at around lunch time, Ms. Boardman raised protected concerns to Benta about his inappropriate and sexually harassing conduct.

53. Ms. Boardman indicated that his sexually harassing behavior (including the sexual assault) needed to stop. Despite her repeated efforts to raise protected concerns and her requests that Benta stop his sexually harassing behaviors and assaults, his sexual harassment continued.

54. For example, on or around June 6, 2022, Ms. Boardman was cleaning the bathroom with her janitorial sign blocking the door, and Benta again entered the bathroom regardless.

55. Benta asked in a leering and sexual manner, "is this where the party is at?"

56. Indeed, Benta frequently made this and similar comments, and Ms. Boardman refused to engage with him, making it clear that his sexual attention was unwanted, unwelcome, and inappropriate.

57. Benta left the bathroom clearly annoyed that Ms. Boardman was resistant to his sexually harassing behaviors.

58. Again, on or around June 7, 2022, Benta again began to follow Ms. Boardman around the workplace in a clearly harassing and hostile manner that resembled stalking. Benta following Ms. Boardman all the way across the building to the shipping department when he had no legitimate reason to be in that department.

59. Clearly, Benta was escalating his sexual harassment because of Ms. Boardman's refusal to submit to his sexual advances and assaults.

60.     Ms. Boardman raised protected concerns to Judd (last name unknown, "Judd"), a Collins employee in the shipping department, that Benta was exhibiting stalking and otherwise harassing behaviors.

61.     Judd agreed that Benta's behavior was inappropriate.

62.     Indeed, Judd had previously witnessed Benta following Ms. Boardman around in a stalking manner.

63.     On or around June 8, 2022, Ms. Boardman raised protected concerns regarding the sexual harassment to Patrick (last name unknown, "Patrick"), a male Collins employee.

64.     On or around June 9, 2022, Benta brought Ms. Boardman a cupcake. Ms. Boardman indicated that this gift was unwanted and unwelcome.

65.     Benta did not bring baked goods to male employees.

66.     On or around June 9, 2022, Benta continued to follow Ms. Boardman around the workplace in what was clearly an effort to further harass her.

67.     Ms. Boardman asked Patrick to walk with her because she feared another sexual assault. Understanding the severity of the situation, Patrick walked with Ms. Boardman so she would not have to be alone with Benta.

68.     On or around June 9, 2022, based on the severity of the situation and the escalation of Benta's conduct, Ms. Boardman's husband, Brian Boardman ("Boardman"), contacted Sullivan, the Maintenance Manager who was one of her supervisors at Collins, and raised protected concerns on her behalf related to the harassing behavior by Benta.

69.     Around that same time, Ms. Boardman spoke with Craig Metzik ("Metzik"), the Safety Manager at Collins, and asked him for a meeting so that she could convey concerns.

70.     Shortly thereafter, Sullivan called Ms. Boardman into a meeting and told her that her husband had contacted him to raise protected harassment concerns on her behalf.

71.     Elaborating on the concerns already initiated on her behalf by her husband, Ms. Boardman proceeded to raise protected harassment concerns about Benta's sexually harassing and otherwise harassing conduct, including the sexual assault that happened in the closet.

72.     Shortly thereafter, that same day, Ms. Boardman raised protected concerns to Stephanie (last name unknown, "Stephanie"), one of the few other female employees at Collins. Ms. Boardman described Benta's sexually harassing and otherwise harassing conduct, including multiple sexually harassing incidents (including sexual assaults) that occurred on or around June 1, 2022.

73.     Shortly thereafter Posselt, the male LCS employee who jointly supervised Ms. Boardman along with employees from Collins, asked Ms. Boardman to meet him at the LCS office.

74.     Ms. Boardman went to the LCS office and met with Posselt and Suzanne (last name unknown, "Suzanne"), an employee in the LCS office who handled the Human Resources function for them.

75.     Ms. Boardman raised protected concerns to Posselt and Suzanne, including raising protected concerns about Benta's sexually harassing and otherwise harassing conduct, including describing multiple sexually harassing incidents (including the sexual assaults) that occurred on or around June 1, 2022.

76.     Posselt communicated to Ms. Boardman that this was supposedly the worst harassment incident that the Company had experienced in a long time.

77.     Suzanne typed up an account of Ms. Boardman's protected concerns on the computer.

78.     Despite expressing these concerns to multiple managers, nothing was immediately done to stop the harassment.

79.     On or around June 10, 2022, because she needed her job and had no choice, Ms. Boardman returned to work at Collins as normal.

80.     On or around June 13, 2022, Ms. Boardman was called into a meeting with Posselt, Erin Zuck ("Zuck"), from Human Resources at Collins, and an employee from Collins's Ethics Division (name unknown), who joined the meeting by phone.

81.     Ms. Boardman gave a statement concerning the sexual harassment, stalking, sexual assault in the closet, sexual assault in the bathroom, as well as a number of Benta's other sexually harassing behaviors.

82.     Indeed, the Company's own records reflect that Ms. Boardman described an unwanted hug in the janitor's closet and that: "On June 1, 2022, at approximately 2:30 pm Charging Party was cleaning the same men's room, and this time Benta walked in without knocking.  Benta picked Charging Party up again, and then he put her down and pushed her against a stall wall, he rested his head on her chest, and rubbed her genitalia."

83.     Company records further confirm that 6 employees interviewed by Company employees verified that Ms. Boardman, or her husband, had reported the sexual harassment to them.

84.     Indeed, the report notes that an employee identified in the investigation as Employee 1 stated Ms. Boardman informed him on "June 2, 2022 that she received an unwanted hug from Benta."

85.    The Company records further state that an employee identified as Employee 3 stated that Ms. Boardman said "Benta would not stop bothering her, and she informed the employee about the photo/hug incident.  Employee #3 noted that [Ms. Boardman] appeared nervous."

86.    An employee identified as Employee 4 "noticed [Ms. Boardman] seemed out of sorts and asked if she was okay.  [Ms. Boardman] informed employee #4 of the hugging incident,…."

87.    The report also notes that "[Ms. Boardman] informed a fifth employee (#5) of the hugging and grabbing incident."

88.    Benta himself acknowledged both incidents in which he touched Ms. Boardman in a sexual manner but, falsely, claimed that the conduct was consensual.

89.    Despite these employees verifying the sexual harassment, and Ms. Boardman's statements to them that they were not consensual and that she felt uncomfortable, the Company implausibly claimed that it could not "determine who was being truthful."

90.    Accordingly, the Company refused to take any meaningful action to address Ms. Boardman's harassment concerns or to prevent the harassment from continuing.

91.    On or around June 16, 2022, Posselt came into the Collins facility and abruptly reprimanded Ms. Boardman for speaking about the sexual assault.  Indeed, he stated that Ms. Boardman was telling people about the sexual harassment and that she needed to stop (in what was clearly a threatening and retaliatory effort to silence Ms. Boardman, force her to undergo further harassment in silence, and to prevent her from further raising further protected harassment concerns).

92.      Based on his tone of voice and body language, it was clear that Posselt was angry that Ms. Boardman had raised protected concerns about sexual harassment and sexual assault, and it was clear that Posselt was retaliating against her and threatening further retaliation if she complained further.

93.      Ms. Boardman raised protected concerns indicating that this was unfair.

94.      In its sworn Position Statement in response to the Charge Ms. Boardman filed with the United States Equal Employment Opportunity Commission, the Company stated: "Collins concluded that Benta and Charging Party engaged in inappropriate behavior in the janitor's supply closet and the men's restroom on June 1, 2022.  Both individuals acknowledged the hugging and touching events; however, Benta stated the interactions were consensual, whereas Charging Party stated that the hugs and touching were not consensual.  Based on the available evidence, it was difficult to determine who was being truthful.  But, the unprofessional behavior, whether consensual or not, was a violation of the Company Code of Conduct."

95.      This was not a plausible conclusion and was not supported by the facts of the investigation, which clearly corroborated Ms. Boardman's account that Benta had sexually harassed and assaulted her and that none of Benta's sexual contact with her had been consensual. Indeed, Ms. Boardman complained to numerous employees and managers about Benta's behavior exactly because his conduct had been horrifying and had not been consensual.

96.      The Position Statement filed at the EEOC went on to note that because Ms. Boardman had somehow been unprofessional by being subjected to sexual harassment and assaults against her will at the Company worksite, the Company (Collins) ensured Ms. Boardman was terminated by asking LCS to terminate Ms. Boardman from her assignment at Collins.

97.     Ms. Boardman was notified she was terminated on or around June 24, 2022, by Posselt who called Ms. Boardman and told her that Collins no longer wanted her to work for it and that this was causing her termination.

98.     Ms. Boardman was terminated from both Collins and LCS.

99.     As such, Ms. Boardman was involuntarily terminated on or around June 24, 2022.

100.    Ms. Boardman filed a police report concerning Benta's sexual assaults on or around June 29, 2022.

101.    Upon information and belief, the Company refused to fully cooperate with the police investigation.

102.    On July 14, 2022, Ms. Boardman timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

103.    On January 22, 2024, the EEOC issued Ms. Boardman a Right to Sue letter at her request.

104.    This lawsuit is timely filed.

## COUNT I

**(Sex Discrimination and Sexual Harassment in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (LCS, Collins, Posselt, and Sullivan)**

105.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

106.    The Company (including each of LCS and Collins both collectively and individually) is (and at all relevant times was) an employer as defined by state anti-discrimination laws, including the NYSHRL.

107.    Defendants, by and through its agents, sexually harassed and discriminated against Ms. Boardman with respect to the terms, conditions, and/or privileges of her employment, because of Ms. Boardman's sex (female).

108.    Indeed, Defendants failed in their legal obligations to provide Ms. Boardman a workplace free of sexual harassment (including through not providing the required sexual harassment training) and/or to protect Ms. Boardman from sexual harassment.

109.    More specifically, the Defendants subjected Ms. Boardman to adverse actions, including, but not limited to, a hostile and sexually harassing workplace, the refusal to provide Ms. Boardman with a work place free of sexual harassment, and the termination of Ms. Boardman's employment because she was a woman and/or because she was a woman who refused to accept, engage in, or reciprocate sexual harassment and/or refused to accept a sexually harassing and hostile work environment.

110.    Upon information and belief, the Defendants replaced Ms. Boardman with a lesser or similarly qualified, male employee.

111.    Posselt discharged, expelled, barred, and/or discriminated against Ms. Boardman in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Boardman under the NYSHRL.

112.    Posselt aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

113.    Sullivan discharged, expelled, barred, and/or discriminated against Ms. Boardman in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Boardman under the NYSHRL.

114.    Sullivan aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

115.    Defendants have engaged in discrimination, harassment, and other illegal conduct with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

116.    As a direct and proximate result of the Defendants' violation of the NYSHRL, Ms. Boardman has suffered, and continues to suffer, damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

117.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT II**

**(Sexual Harassment and Sex Discrimination in Violation of Title VII,
42 U.S.C. §§2000e, et. seq.)**

**Plaintiff v. All Defendants (LCS and Collins)**

118.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

119.   During all relevant times, the Company (including each of LCS and Collins both collectively and individually) was an employer under Title VII, 42 U.S.C. §§2000e, et. seq. (hereinafter "Title VII") because it employed more than 15 persons for 20 or more calendar weeks within the previous 12-month period.

120.   The Company, by and through its agents, sexually harassed and discriminated against Ms. Boardman with respect to the terms, conditions, and/or privileges of her employment, because of Ms. Boardman's sex (female).

121.   Indeed, the Company failed in their legal obligations to provide Ms. Boardman a workplace free of sexual harassment and/or to protect Ms. Boardman from sexual harassment.

122.   More specifically, the Defendants subjected Ms. Boardman to adverse actions, including, but not limited to, a hostile and sexually harassing workplace, the refusal to provide Ms. Boardman with a work place free of sexual harassment, and the termination of Ms. Boardman's employment because she was a woman and/or because she was a woman who refused to accept, engage in, or reciprocate sexual harassment and/or refused to accept a sexually harassing and hostile work environment.

123.   As a direct and proximate result of the Company's violation of Title VII, Ms. Boardman has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

124.   The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Boardman.

125.   Ms. Boardman seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay),

other monetary damages, diminished earning capacity, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, interest, attorney's fees, and costs.

## COUNT III

**(Retaliation for Engaging in Protected Activity in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (LCS, Collins, Posselt, and Sullivan)**

126.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

127.    Ms. Boardman engaged in protected activity under the New York State Human Rights Law ("NYSHRL"), including, but not limited to, (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding sexual harassment and a hostile work environment based on sex; (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Boardman's sex; (iii) refusing to submit to sexual harassment; (iv) raising concerns about Defendants' failure to provide her a workplace free of sexual harassment and threatening her with retaliation for reporting sexual harassment.

128.    Defendants discriminated against and/or retaliated against Ms. Boardman for engaging in activity protected under the NYSHRL, by subjecting Ms. Boardman to adverse employment actions, including, but not limited to, subjecting Ms. Boardman to a harassing and otherwise hostile work environment, and/or terminating Ms. Boardman for engaging in protected

activities, including opposing sexually harassment and raising protected concerns that she was being sexually harassed.

129. Posselt discharged, expelled, barred, and/or discriminated against Ms. Boardman in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Boardman under the NYSHRL.

130. Posselt aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

131. Sullivan discharged, expelled, barred, and/or discriminated against Ms. Boardman in her compensation, conditions, and/or privileges of employment based on rights afforded to Ms. Boardman under the NYSHRL.

132. Sullivan aided, abetted, incited, coerced, and/or compelled the Company's discriminatory conduct, including, but not limited to, by providing or attempting to provide assistance to individuals participating in conduct forbidden under the NYSHRL.

133. Defendants acted with willful and/or reckless disregard for the state protected rights of Ms. Boardman.

134. As a direct and proximate result of the Defendants' violation of the NYSHRL, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

135. The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages

(including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT IV

## (Retaliation in Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*)

## Plaintiff v. All Defendants (LCS and Collins)

136.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

137.    Ms. Boardman engaged in protected activity under Title VII, including, but not limited to, , (i) opposing, expressing protected concerns, and/or engaging in other protected activity regarding sexual harassment and a hostile work environment based on sex;  (ii) opposing, expressing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Ms. Boardman's sex; (iii) refusing to submit to sexual harassment; (iv) raising concerns about Defendants' failure to provide her a workplace free of sexual harassment and threatening her with retaliation for reporting sexual harassment .

138.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Boardman's exercising of or enjoyment of one or more rights granted by Title VII.

139.    More specifically, the Company subjected Ms. Boardman to adverse actions, including, but not limited to, subjecting Ms. Boardman to a harassing and otherwise hostile work environment, and/or terminating Ms. Boardman for being sexually harassed and raising protected concerns she was being sexually harassed.

140. The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Boardman.

141. As a direct and proximate result of the Company's violations of Title VII, Ms. Boardman has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

142. Ms. Boardman seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, diminished earning capacity, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, interest, attorney's fees, and costs.

## COUNT V

**(Retaliation for Disclosing to One or More Supervisors Policies or Practices of the Company that Ms. Boardman Reasonably Believed Violated a Law, Rule, or Regulation, in Violation of New York Labor Law, Section 740)**

**Plaintiff v. All Defendants (LCS and Collins)**

143. The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

144. Ms. Boardman disclosed to one or more supervisors policies or practices she reasonably believed violated a law, rule, or regulation, including the NYSHRL and Title VII.

145. Defendant discriminated against and/or retaliated against Ms. Boardman for disclosing policies or practices she reasonably believed violated the law to one or more supervisors

by subjecting Ms. Boardman to adverse employment actions, including, but not limited to, subjecting Ms. Boardman to a harassing and otherwise hostile work environment, and/or terminating Ms. Boardman for opposing sexually harassed and raising protected concerns that she was being sexually harassed and subjected to harassing, discriminatory, and retaliatory treatment.

146.    The Company willfully, maliciously, and/or wantonly violated NY Labor Law Section 740.

147.    As a direct and proximate result of the Company's violation of the NY Labor Law Section 740, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

148.    The Plaintiff seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life),  attorneys' fees, interest, and costs.

WHEREFORE, the plaintiff, Meredith Boardman, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendants liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for her diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for her emotional pain, mental anguish, loss of enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff punitive damages;

H.  Award the Plaintiff her reasonable attorney's fees;

I.  Award the Plaintiff interest and costs;

J.  Award the Plaintiff all other damages to which she is entitled; and

K.  Grant such further relief as is just and equitable.

Respectfully Submitted,

MEREDITH BOARDMAN

By her attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date: January 22, 2024          By:      /s/Timothy Brock

Benjamin J. Wyatt (#5604590)
BWyatt@Wyattlegalservices.com

Timothy Brock (#5614151)
Tbrock@wyattlegalservices.com

Main Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office:
The Law Offices of Wyatt & Associates,
P.L.L.C.
69 State Street, 13th Floor
Albany, NY 12207